USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/25/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

TRUSTEES FOR THE MASON TENDERS DISTRICT
COUNCIL WELFARE FUND, PENSION FUND,
ANNUITY FUND, and TRAINING PROGRAM FUND;
and ROBERT BONANZA, *as Business Manager of the*
MASON TENDERS DISTRICT COUNCIL OF
GREATER NEW YORK,

                         Plaintiffs,

       -v-

UNITED CONSTRUCTION FIELD, INC.,

                         Defendant.

------------------------------------------------------------X

14 Civ. 9996 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

       On December 18, 2014, the Trustees for the Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program Fund, and Robert Bonanza as Business Manager of the Mason Tenders District Council of Greater New York (collectively, "plaintiffs"), commenced this action to confirm an arbitration award (the "Award") issued against defendant United Construction Field, Inc. ("UCF"). Dkt. 1 ("Compl."). This action was filed under Section 501(d)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(d)(1); Section 301(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. Plaintiffs also seek statutory interest to accrue from the date judgment is entered in this case until UCF has paid the Award in full.

       On January 14, 2015, the Complaint was served on UCF, and on January 21, 2015, proof of service was filed with the Court. Dkt. 3. The deadline for UCF to answer the Complaint was

February 4, 2015, *see* Dkt. 3, and the deadline for UCF to oppose plaintiffs' motion for summary judgment was March 20, 2015, *see* Dkt. 4. To date, UCF has not appeared in this action.

For the following reasons, the Award is confirmed, and plaintiffs' request for post-judgment interest is granted.

I.   **Background**[1]

   A.   **The Parties**

The Mason Tenders District Council Welfare, Annuity, Pension, and Training Program Funds (collectively, the "Funds") are employee benefit plans as defined in Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and multiemployer plans within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A). Compl. ¶ 1. The Funds' main purpose is to provide fringe benefits to eligible employees pursuant to collective bargaining agreements between employers and the Mason Tenders District Council of Greater New York and Long Island (the "Union"). *Id.* Each of the Funds is established and maintained pursuant to an Amended and Restated Agreement and Declaration of Trust, the "Benefit Plan Trust Agreement" and the "Pension Fund Trust Agreement" (collectively, the "Trust Agreements"). *Id.* The Funds maintain their principal place of business in New York, New York. *Id.* Bonanza, the Business Manager of the Union, brings this action for dues and contributions in his representative capacity pursuant to Section 12 of the General Associations Law of the State of New York. Savci Decl. ¶ 6.

UCF is an "employer" as defined by the Trust Agreements; it is a signatory to the 2008–2011 Independent Collective Bargaining Agreement ("CBA") and the 2009–2014 NYC Agency

---

[1] The following undisputed facts are derived from the Complaint, Dkt. 1 ("Compl."); the declaration of Haluk Savci in support of the motion for summary judgment, Dkt. 7 ("Savci Decl."); and plaintiffs' memorandum of law in support of the motion for summary judgment, Dkt. 10 ("Pl. Br.").

2

Renovation Project Labor Agreement ("PLA"). Compl. ¶ 6. UCF's place of business is in Brooklyn, New York. *Id.* ¶ 3.

### B.     The Collective Bargaining Agreements

On July 1, 2008, Shamas Mian, then President of UCF, signed the CBA on behalf of UCF, and Bonanza signed on behalf of the Union. Savci Decl., Ex. 1A ("CBA"), at 39. By its terms, the CBA was to remain effective through June 30, 2011, and thereafter renew automatically for one-year terms unless either party sought to modify or amend it. *Id.* at 37. Neither party has given "written notice of termination pursuant to the terms of the [CBA]." Savci Decl. ¶ 9.

Under the CBA, UCF was required to "pay weekly all fringe benefit contributions, dues, and MTDC PAC [Union Political Action Committee] deductions to the applicable entity." CBA at 41. As an enforcement mechanism, the CBA provides for audits by the Union to independently verify that proper contributions have been made. *Id.* at 23. The CBA further provides for dispute resolution through arbitration. *Id.* at 32. It details the arbitration procedures to be followed, stating, in relevant part, that where UCF is found to have failed to pay the fringe benefits, dues, or MTDC PAC contributions, the Union may seek an award that includes "interest at the prime rate on the day of the award plus two percent, running from the date of the violation," attorneys' fees and costs, and statutory relief. *Id.* at 33.

On November 14, 2009, Mian, again acting on behalf of UCF, signed a Sub-Contractor Affidavit of Project Labor Agreement. Savci Decl., Ex. 1B ("PLA"), at 1. On May 4, 2011, Mian executed a Letter of Assent to the same effect. *Id.* at 2. These agreements bound UCF to the terms of the PLA, effective from 2009 to 2014. *Id.* at 1–2. The PLA, together with the CBA, bound UCF to the terms by which it was to manage work on various projects. The PLA

incorporates the Trust Agreement. PLA at Art. 11 § 2b. The Trust Agreement states, in relevant part, that "[i]n addition to any other remedies which may exist under the applicable Collective Bargaining Agreement . . . an Employer in default for ten (10) business days shall be obligated to pay interest from the due date . . . in the amount determined by using the rate prescribed under section 6621 of Title 26 of the United States Code." Savci Decl., Ex. 2 ("Trust Agreement") at 37. The PLA also provides procedures for arbitration, which include that if, after due notice, a party "fails to be present or fails to obtain a postponement" the arbitration award "shall be based solely on the evidence presented by the appearing party." *Id.* Ex. 3, at 3.

### C. The Arbitration Award

On May 9, 2013, plaintiffs sent a Notice and Demand for Arbitration to UCF, alleging that UCF had failed to make sufficient benefit contributions for the period of February 1, 2012 through June 30, 2012. Savci Decl. ¶ 18. On May 20, 2013, Robert Herzog, Esq., an approved arbitrator listed in the CBA, scheduled a hearing for June 24, 2013. *Id.* A notice of the hearing was delivered to UCF via regular and certified mail, as required by the CBA. *See id.*; CBA at 32. On June 24, 2013, UCF failed to appear, and plaintiffs agreed to reschedule. Savci Decl. ¶ 18. Herzog rescheduled the hearing for September 9, 2013. *Id.* Again, Herzog sent proper notice to UCF, but no representative appeared on the company's behalf. *Id.* On November 19, 2013, after rescheduling and notifying UCF of the new hearing date, Herzog held the hearing. *Id.* ¶ 19. Although UCF "received notice of the November 19, 2013 proceeding and the claim against it, no appearance on its behalf was made." Compl., Ex. 1 ("Award") at 4.

The arbitration proceeded as a default hearing, and plaintiffs provided an audited review of the relevant records, which showed that UCF "was deficient in its contributions to the Funds." *Id.* at 5. Herzog directed UCF to pay the "delinquency amount including interest, liquidated

4

damages, and legal and arbitration costs and fees" totaling to "the aggregate amount of twenty-nine thousand, seven hundred twenty dollars and eighty-five cents ($29,720.85) with interest to accrue at the prime rate from the date of this Award." *Id.* at 5–6.

### D.    This Action

On January 14, 2015, plaintiffs filed the Complaint seeking to confirm the Award "in the amount of $29,720.85 with statutory interest to accrue from the date of the entry of Judgment." Compl. ¶ 20. On January 21, 2015, plaintiffs filed an affidavit of service confirming that service had been accepted on behalf of UCF. Dkt. 3. Despite this, UCF has failed to appear or answer the Complaint. On March 6, 2015, plaintiffs moved for summary judgment. Dkt. 6. UCF has not opposed this motion.

## II.   Discussion

### A.    Legal Standard

"Arbitration awards are not self-enforcing"; "they must be given force and effect by being converted to judicial orders by courts." *Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). The FAA provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'" *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (citations omitted). In this Circuit, "[t]he showing required to avoid summary confirmation of an arbitration award is

5

high." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.").

Review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman*, 2011 WL 6778499 at *2 (quoting *Willemijn*, 103 F.3d at 12). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citations omitted). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). In reviewing an unopposed motion for confirmation of an arbitration award, a court:

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*.

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (citations omitted). Where "there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law [. . .] a court must confirm the award upon the timely application of any party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007) (citing 9 U.S.C. § 9; *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

### B. Confirmation of the Arbitration Award

On the basis of the Award, and on the very limited review that is appropriate, the Court finds that summary judgment is warranted, as plaintiffs have shown there is no material issue of fact in dispute. The arbitrator acted within the scope of the authority granted him by the parties. *See* CBA Art. X § b. The arbitrator found, *inter alia*, that the CBA and PLA: (1) obligated UCF to contribute to fringe benefits and the MTDC PAC, and (2) authorized the Funds to verify that all the required payments and contributions were made. Award at 4. Further, based on

testimony from a representative of the Funds, the arbitrator concluded that UCF was deficient in its contributions. From this, this Court concludes that there is at least, and by all indications more than, a "barely colorable justification for the outcome reached." *Landy Michaels Realty Corp.*, 954 F.2d at 797. Accordingly, the Court confirms the Award in favor of plaintiffs, for a total amount of $29,720.85, plus interest.

### C.     Post-Judgment Interest

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court, . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Awards of post-judgment interest under § 1961 are mandatory. *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases). Arbitration is to be "docketed as if it was rendered in an action," and "have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Accordingly, § 1961 applies to actions to confirm arbitration. *See, e.g., Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004) (awarding post-judgment interest in an arbitration case). The Court therefore awards interest to accrue from the date judgment is entered until payment is made.

### CONCLUSION

For the reasons stated above, the Court confirms the Award in favor of plaintiffs in the amounts of:

(1) $29,720.85 against UCF, pursuant to the Award; and

(2) Post-judgment interest in accordance with 28 U.S.C. § 1961(a).

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 6, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 25, 2015
       New York, New York